201 So.2d 379 (1967)
Edward BAUDIN, Plaintiff and Appellant,
v.
TRADERS & GENERAL INSURANCE COMPANY et al., Defendants and Appellees.
No. 2029.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1967.
Rehearing Denied July 27, 1967.
*380 Simon, Trice & Mouton, by J. Minos Simon, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, Jr., Lafayette, Earl H. Willis, St. Martinville, for defendants-appellees.
Before FRUGE SAVOY and CULPEPPER, Judge.
CULPEPPER, Judge.
The plaintiff, Edward Baudin, seeks damages for personal injuries to his 3 year old child, Keith A. Baudin, who ran across a street, from behind a parked automobile, and was struck by an approaching vehicle. Named as defendants are Mrs. Laurie M. Agnelle, mother of Joseph B. Angelle, the minor driver of the approaching automobile; and Traders & General Insurance Company, the liability insurer of the parked vehicle.
By strange coincidence, the parked vehicle was owned by the plaintiff himself and was being driven with his permission by Jesse Paul Theriot, an omnibus insured under the policy. Recovery is sought from Traders & General Insurance Company under two different policy coverages: (1) The Uninsured Motorist clause, since Angelle was not insured; (2) the so-called "Omnibus Insured" clause, on the theory that the liability is one "arising out of the * * * use" of the Baudin vehicle by the permittee, Theriot.
The defendant insurer filed an answer denying any negligence on the part of the uninsured motorist, Angelle. This portion of the case is still pending in the district court and is not before us on appeal.
As to the omnibus insured, the insurer filed an exception of no cause of action and, alternatively, a motion for summary judgment, seeking dismissal of plaintiff's suit. The district judge granted summary judgment. Plaintiff appealed.
There is no genuine issue of material fact. For purposes of its motion for summary judgment, the defendant insurer has admitted all of the facts alleged in plaintiff's *381 original and supplemental petitions and has filed in the record a copy of the insurance policy in question. On the basis of these facts, the defendant contends it is entitled to judgment as a matter of law.[1]
Plaintiff alleges that he resides on the north side of St. Charles Street, in Breaux Bridge, Louisiana, directly across the street from the dwelling of Robert Erwin. On the day in question, several small children, including plaintiff's 3 year old son, were playing in the Erwin's front yard a short distance from the street.
The omnibus insured, Jesse Theriot, drove in an easterly direction along St. Charles Street and stopped in front of the Erwin home. He saw plaintiff's son and instructed him "to go home", but the boy did not at first obey. Kathy Erwin then came out and stood in the street at the left side of the car. Shortly thereafter, the Baudin child started toward his home. The Angelle vehicle was approaching in a westerly direction on the street, at a speed of about 30 miles per hour. The child ran behind the parked automobile directly into the path of the approaching car, where he was struck and seriously injured.
Plaintiff alleges the omnibus insured was negligent in the following respects: (1) By parking in front of the Erwin house and instructing the boy to "go home", knowing that the boy had to pass either in front of or behind the parked vehicle and that motorists approaching from either direction might not see him. (2) Having undertaken to tell the child to "go home", he failed to take reasonable precautions for his safety in doing so, by remaining in this parked position, knowing the parked vehicle constituted a "perilous entrapment" for the child as to approaching motorists. (3) Continuing to remain in this parked position when he knew, or should have known, the child was running behind the car as the Angelle vehicle was approaching on a collision course.
In the following pertinent portion of the policy the insurer agrees:
"Part ILiability
"Coverage ABodily Injury; * * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of: A. Bodily injury, * * *
arising out of the ownership, maintenance or use of the owned automobile. * * *"
Under these policy provisions, the insurer agrees to pay if: (1) the insured is "legally obligated" to pay damages; (2) "arising out of"; (3) the "use" of the automobile.
As counsel for defendant has stated in his brief, we can, for purposes of this motion for summary judgment, assume the first of these three requirements is met, i. e. that the omnibus insured is legally obligated to pay damages because of actionable negligence. In this appeal, the issue is not whether the insured is liable, but whether his liability arose out of the use of the vehicle.
Furthermore, requirement number (3) is satisfied because the insured was clearly using the automobile. There is considerable authority that the term "use" is a broad catch-all designed to include all proper uses of the vehicle not falling within the terms "ownership" or "maintenance". Bolton v. North River Insurance Company, 102 So.2d 544 (La.App. 1st Cir. 1958); Tucker v. State Farm Mutual Automobile Insurance Company, 154 So.2d 226 (La.App. 2d Cir. 1963); Appleman's Insurance Law & Practice, Vol. 7, Section 4316(e); Annotation, 89 A.L.R.2d 150, at pages 163-172. The term "use" involves simply employment for the purpose of the user and is broader than the term "operation" which involves direction and control of the mechanism such as by a driver. Maryland Casualty Company v. Marshbank, 226 F.2d 637 (U.S.C.A. 3d 1955); Liberty Mutual Insurance Company v. Steenberg Construction, 225 F.2d 294 *382 (U.S.C.A. 8th 1955). In the present case, it is clear that Theriot's actions in parking and remaining seated in the automobile constituted "use".
The principal issue in this case is whether the liability was one "arising out of" the use of the vehicle by the omnibus insured. The Annotation in 89 A.L.R.2d 150 (1950) has as its purpose a consideration of all of the cases construing the policy provision "arising out of the ownership, maintenance or use" of the automobile.[2] Summarizing the cases cited (pages 152-153) the Annotation reaches these general conclusions: (1) The courts recognize that if a policy is susceptible of more than one construction it will be construed in the manner most favorable to the insured; (2) The cases generally agree that in order for the accident to "arise out of the * * * use" of a vehicle there must be some causal relationship between the accident and the use; (3) The issue in most cases is whether there was, under the particular facts, the necessary causal relationship; (4) Although many cases do not attempt to construe the specific clause, "arising out of", those which do hold this clause to mean "originating from", "growing out of", "flowing from", or "having its source in".[3]
We will not attempt to discuss all of the cases found in the cited annotations, but will use a few for illustrative purposes. Among those holding there was a sufficient causal relationship between the accident and the use is Merchants Company v. Hartford Accident & Indemnity Company, 187 Miss. 301, 188 So. 571, 192 So. 566 (1939) in which a truck became stuck in a highway ditch. The operator used several large poles to extricate the truck and then drove away, leaving the poles on the road, where they were struck that night by the automobile in which plaintiff was a passenger. The court noted particularly that the policy did not require the accident to be the "proximate result" of, but only that it "arise out of", the use of the truck. In discussing causation the court said:
"[W]here a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation,which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists."
In Schmidt v. Utilities Insurance Company, 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R. 1088 (1944) the operator of a coal truck used wooden blocks as a ramp to drive the truck up the curb to a coalhole. After unloading, the driver left the blocks on the sidewalk where plaintiff fell over them and was injured. The court held the accident arose out of the use of the truck, declaring that the policy did not require the injury to be the proximate result, in a strict legal sense of that term, of the use of the vehicle, but only that the injury arise out of the use. The test of causation was expressed as follows:
"Whether or not plaintiff's injury, and the negligent act which caused it, arose out of the use of the trucks covered by the policy depends upon the general circumstances of the case as shown by the evidence, the nature of the use of the automobile trucks, as shown by the declarations *383 in the policy, the connection or relationship between the negligent act, which produced the injury, and the intended use of the trucks. We must consider whether the negligent act and resulting injury was a natural and reasonable incident or consequence of the use of the trucks for the purposes shown by the declarations, though not foreseen or expected; and whether, after the negligent acts and injury were complete, it was possible to trace the negligent acts and resulting injury as reasonably incident to, and closely connected with, the use of the trucks for the purposes shown in the declarations in the policy."
Counsel for both plaintiff and defendant in the present case have cited Tucker v. State Farm Mutual Insurance Company, 154 So.2d 226 (La.App. 2d Cir. 1963), in which plaintiff's wife parked the insured automobile on an inclined driveway and went into her home. Shortly thereafter, a 7 year old child was playing in the vehicle and apparently disengaged the gears or the brake and it began to roll down the incline. Plaintiff's wife came out and attempted to stop the automobile and was struck and fatally injured. The court's decision turned on its construction of the word "use", holding that the automobile was not being used by the child as this term was intended by the parties to the policy.[4] However, in the course of its decision the court quoted the following with reference to causation, from 7 Am. Jur.2d, Section 82:
"`In determining whether the negligent act that caused a bodily injury arose out of the "use" of a motor vehicle within the coverage of a motor vehicle liability policy, the court must consider whether it was a natural and reasonable incident or the consequence of the use of the vehicle for the purposes shown by the declarations, though not foreseen or expected.'"
Illustrative of cases holding there was no causal relationship between the accident and the use of the vehicle is Kienstra v. Madison County Mutual Automobile Insurance Company, 316 Ill.App. 238, 44 N.E.2d 944 (1942), in which the operator of an ice truck was carrying a 50 pound cake of ice from the truck to the house of a customer, when he negligently allowed the ice to fall on plaintiff's child, who was playing in the yard. Noting that the accident occurred after the operator had removed the ice from the truck, and was carrying it through the customer's yard, the court held there was no causal relationship between the accident and the use of the truck.
In Zurich General Accident & Liability Insurance Company v. American Mutual Liability Insurance Company, 118 N.J.L. 317, 192 A. 387 (1937) the driver of an ice truck was placing ice in the refrigerator of a business establishment and, while doing so, negligently stabbed the proprietor's wrist. The court held the contracting parties contemplated only accidents "immediately identified" with the use of the vehicle and that this injury was too remote from the use of the truck.
Defendant cites and quotes at length from Handley v. Oakley, 10 Wash.2d 396, 116 P.2d 833 (1941) where an ice cream truck was parked 25 feet outside the foul line near third base of a baseball diamond. Plaintiff's minor child was purchasing ice cream from the truck when he was struck by a sharply hit foul ball. The court held the primary cause of the accident was the baseball game; that the truck was being used only as a place to store ice cream for sale; that the accident would have happened regardless of the truck; hence the use of the truck was not a cause of the accident within the contemplation of the policy. We express no opinion as to the correctness as to this decision, but will state only that the rationale appears to be *384 that being struck by a baseball is not the type of accident contemplated by the parties to the policy as arising from the use of the truck.[5]
In National Union Fire Insurance Company of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966), a minor passenger in an automobile returning from a hunting trip negligently discharged a gun and shot the driver. The court held the passenger was using the vehicle but the accident was not "immediately identifiable" with the use of the vehicle as contemplated by the contracting parties.
There are several other Louisiana cases worthy of mention. In Bolton v. North River Insurance Company, 102 So.2d 544 (La.App. 1st Cir. 1958, certiorari refused) the plaintiff was standing beside a parked automobile talking to the occupants when a passenger on the rear seat slammed the door shut on plaintiff's hand. The court held the passenger was an omnibus insured using the automobile; that the term "use" in the policy is a catch-all designed to include all proper uses of the vehicle not falling within one of the previous terms, i. e. ownership or maintenance; and that the insurer was liable for the negligence of the omnibus insured. The specific term, "arising out of" is not discussed but it is implicit in the decision that the court found the accident did arise out of the use of the automobile. Comparing this case with the present one, what is the difference in theory, between slamming a door on a person's hand, and parking and telling a toddling 3 year old to cross the street, knowing that the child might pass behind the parked automobile and be struck by an oncoming motorist who is in full view?
In Vogt v. Hotard, 144 So.2d 714 (La. App. 4th Cir. 1962, certiorari denied) plaintiff and defendant were cutting down a tree. They used ropes attached to the insured automobile to pull the tree down in the proper direction. Defendant drove and plaintiff stood nearby. The tree fell in the wrong direction and struck plaintiff. The court held the driver negligent in the use of the insured vehicle and awarded judgment against the insurer. Apparently no issue was raised as to whether the accident "arose out of" the use.
There are 3 Louisiana cases which distinguish between "maintenance" and "use" to hold the insurer free of liability. In Knight v. Thomas, 141 So.2d 134 (La.App. 1st Cir. 1962), plaintiff was helping defendant dislodge a bearing from the axle of the insured automobile when a sliver of steel flew out and hit plaintiff in the eye. In Wall v. Windmann, 142 So.2d 537 (La.App. 4th Cir. 1962), a mechanic was in front of a new truck adjusting the engine when a fellow employee started it forward and crushed his leg. Chase v. Dunbar, 185 So.2d 563 (La.App. 1st Cir. 1966), involved a situation where an alleged mechanic was helping to refill the insured vehicle with gasoline, by pouring gas in the carburetor, when the gas ignited and the mechanic threw the burning can aside where it hit plaintiff, who was a janitor working in the yard of a church. In all three of these cases the court held that the negligent parties were involved in "maintenance" and not "use" of the insured vehicles and that, under the policies, an omnibus insured is covered only for use and not maintenance. Of course, these cases are readily distinguishable from the present matter.
It is not our purpose here to establish a required list of tests of causation for holding that the accident is one "arising out of" the use of the automobile. Each case must be decided under its own particular facts. However, we note that the following tests have been used in the cited cases: (1) The dangerous situation causing injury must have its source in the use of the *385 automobile; (2) The chain of events resulting in the accident must originate in the use of the automobile and be unbroken by the intervention of any event which has no direct or substantial relation to the use of the vehicle; (3) The accident must be a natural and reasonable incident or consequence of the use of the vehicle for the purposes contemplated by the policy, although not necessarily foreseen or expected; (4) The accident must be one which can be "immediately identified" with the use of the automobile as contemplated by the parties to the policy; (5) The accident must be of a type reasonably associated with the use of the automobile as contemplated by the contracting parties; (6) The accident must be one which would not have happened "but for" the use of the automobile.
In the present case all of these tests are satisfied: (1) The injury to the child clearly had its source in the parking of the insured vehicle and its remaining parked in a position which obscured the vision of the approaching motorist; (2) The chain of circumstances originating in the parking of the vehicle was not broken by any event having no substantial relation to the use of the automobile, the closest thing to such an event perhaps being the insured omnibus driver telling the child to "go home", but that event occurred while the insured was still using the vehicle to sit in and at a time when he knew or should have known that a very hazardous situation was developing; (3) There can be little question that the accident was a natural and reasonable consequence of the use of the automobile for a purpose contemplated by the policy, for the parking of an automobile is a contemplated use and injury resulting from parking is natural and reasonable; (4) Construing "immediately identified" to mean "closely associated with, as to both time and causation", the injury to the child occurred very soon after the parking and, actually, while the vehicle was still being used by the omnibus insured, and the injury was very closely associated with this use of the vehicle; (5) The type of accident, i. e. being struck by a vehicle in the street, is clearly one contemplated by the parties to the policy; (6) The child would not have been injured "but for" the fact that the parked vehicle obscured the vision of the approaching motorist.
It is our conclusion that under the facts as alleged in plaintiff's petition, the accident was one "arising out of the * * * use" of the insured automobile within the contemplation of the policy.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that this case be remanded to the district court for further proceedings in accordance with law and the views expressed therein. All costs of this appeal are assessed against the defendant appellee.
Reversed and remanded.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] See LSA-C.C.P. Art. 966-969 for the law on summary judgments.
[2] See also Risjord-Austin, Automobile Liability Insurance Cases, Chapter 16 for another annotation; Words and Phrases, Vol. 4, page 206 and Pocket Parts.
[3] However we note that in most cases this is not the sole test of causal relationship used.
[4] This holding is criticized in Risjord-Austin, Automobile Liability Insurance Cases, Vol. 3, page 3652, Case No. 2843.
[5] This decision also is criticized by Risjord-Austin, Automobile Liability Insurance Cases, Vol. 1, page 167, Case No. 155.