363 So.2d 1292 (1978)
Dr. Joseph D. DUVIGNEAUD
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.
No. 9383.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1978.
Rehearings Denied November 20, 1978.
Writ Refused January 12, 1979.
*1293 Hammett, Leake, Hammett, Hulse & Nelson, Craig R. Nelson, New Orleans, for defendant-appellant.
Joseph W. Nelkin, New Orleans, for plaintiff-appellee.
Before LEMMON, GULOTTA, SCHOTT, BEER and GARSAUD, JJ.
SCHOTT, Judge.
On October 5, 1975, Joseph Calecas, Jr. drove his car to the New Orleans Lakefront accompanied by Everett Rowe and a large dog belonging to Mrs. Rowe. Calecas parked his vehicle on the lake side of Lakeshore Drive and got out of the car to observe some sailboats. The dog was in the back seat and the car windows were open. In the next few moments with Rowe still in the right front seat of the car, the dog jumped through an open window on the left side, ran around the front of the car and then into Lakeshore Drive, where he ran into a motorbike being operated by Dr. Joseph D. Duvigneaud. This caused Duvigneaud to fall as the motorbike went out of control, and to sustain multiple fracture of the patella. Rowe was not aware that the dog had jumped from the car until he saw it coming from the front to the right side of the car.
Duvigneaud filed suit against Government Employees Insurance Company (GEICO), alleging its liability by reason of the uninsured motorists coverage provisions of the policy issued by GEICO to Duvigneaud. He contends that Calecas was negligent in failing to secure the animal in the car by rolling up the windows, and that this constituted "use" of the vehicle so as to make Duvigneaud's policy with GEICO applicable.
Duvigneaud's case against GEICO was tried to a jury who returned a general verdict in favor of Duvigneaud and against GEICO, awarding $1,100 in special damages *1294 and $8,900 in general damages. From a judgment entered in accordance with this verdict GEICO has appealed.
GEICO contends that 1) there was no proof of negligence on the part of Calecas, 2) there was no coverage by its policy for this incident, and 3) the trial judge committed error in failing to give the jury two proposed instructions, 4) Rowe's conduct constituted an independent intervening cause of the accident, and 5) the award of $1,100 for special medical expenses was beyond the scope of the policy.
There is evidence in the record from which the jury could conclude that Calecas was negligent. Both he and Rowe described this dog as a large playful puppy, and he described an incident prior to the one sued on in which the dog had jumped from a car through an open window although on that occasion he was commanded to do so. This was a popular recreation area on a beautiful October Sunday afternoon. A great deal of activity was taking place. Finally, Rowe gave the impression that another dog in the area caught his dog's attention provoking his exit from the car. Apparently the jury concluded that Calecas, as the owner of the car, had some duty to restrain the animal inside the automobile and that his leaving through an open window and becoming involved in a mishap was reasonably foreseeable.
On coverage, the policy provides under "Protection Against Uninsured Motorists" as follows:
"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . ."
It seems unnecessary to labor the point that an ordinary "use" of any vehicle is the transportation of things be they animate, such as a dog, or inanimate. Thus, coverage did not even present an issue in Huskey v. Maryland Cas. Co., 53 So.2d 174 (La.App. 2nd Cir. 1951), where an accident was caused by a bundle of sugar cane which fell from defendant's truck in the path of plaintiffs' vehicle. In the instant case, Calecas' negligence in failing to secure the animal arose out of the use of his automobile in transporting the animal around.
This case is easily distinguished from Speziale v. Kohnke, 194 So.2d 485 (La.App. 4th Cir. 1967), writ refused, 250 La. 469, 196 So.2d 534, where this court held that injury resulting from the actions of passengers throwing firecrackers from a moving automobile did not arise out of the use of the automobile. The court reasoned that the tortious acts were deliberate acts by the passengers as opposed to acts of the owner or driver arising out of the use of his automobile.
In Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App. 1st Cir. 1974), writ refused, La., 307 So.2d 630, where the negligence of a truck driver in leaving a spill of gravel on a highway contributed to a fatal accident, the court found that the negligence did not arise out of the use of the automobile because it was not the spillage itself but leaving it unattended after it spilled which caused the accident. In the instant case the accident happened immediately following the dog's exit from the car. The Tillman case would perhaps be applicable if the dog had been out for a time and had subsequently caused the accident.
In Baudin v. Traders & General Insurance Company, 201 So.2d 379 (La.App. 3rd Cir. 1967), the court analyzed the jurisprudence interpreting the provision "arising out of" the use of the automobile and found that the following tests have been used:
"(1) The dangerous situation causing injury must have its source in the use of the automobile; (2) The chain of events resulting in the accident must originate in the use of the automobile and be unbroken by the intervention of any event which has no direct or substantial relation to the use of the vehicle; (3) The accident *1295 must be a natural and reasonable incident or consequence of the use of the vehicle for the purposes contemplated by the policy, although not necessarily foreseen or expected; (4) The accident must be one which can be `immediately identified' with the use of the automobile as contemplated by the parties to the policy; (5) The accident must be of a type reasonably associated with the use of the automobile as contemplated by the contracting parties; (6) The accident must be one which would not have happened `but for' the use of the automobile."
We have concluded that this case meets all these tests. This accident was a consequence of Calecas' use of his automobile to transport this large playful animal to a busy place, and his negligence consisted in failing to secure the animal with the foreseeable result that the animal jumped out of an open window and practically immediately and directly caused Dr. Duvineaud to be injured.
We see no error in the instructions of the trial judge. One of the two instructions proposed by GEICO and rejected by the trial judge was merely a quotation from the policy of the coverage which is quoted hereinabove. We fail to see why it was necessary for the trial judge to give the instruction. He repeatedly instructed the jury that they were to decide if Calecas was negligent in the use of his automobile. This was a proper issue for the jury to decide. The other instruction requested by GEICO would have been misleading. It included the following:
"Therefore, you must determine whether or not the act of a dog jumping out of a window of a parked uninsured motorist's vehicle constitutes use of that uninsured motorist's vehicle."
Obviously, the crux of this case is not the dog jumping but, rather, the owner's conduct with respect to the dog which might and did jump from the car.
On the issue of Rowe's intervening negligence, the jury was properly instructed that the issue was the negligence of Calecas as the proximate cause of the accident. Calecas was the owner and operator of the car. He was responsible for transporting the dog and securing it in this area. When he got out he should have rolled up the window of the car so that the dog couldn't get out. Rowe was getting ready to leave the car himself, checking traffic before opening his door, when he saw the dog already out of the car. Nothing in this sequence of events suggests a transfer of responsibility from Calecas to Rowe for securing the animal in the few moments after Calecas got out.
The final issue raised by GEICO is that a portion of the award, $1,100 for medical expenses, was beyond the scope of uninsured motorists protection. The argument seems to be that the policy would not provide coverage for plaintiff's medical bills under the medical pay provisions of the policy, so it must follow that the bills are not recoverable under the UM provisions. We disagree. The latter provisions are broad, providing recovery for "damages. . . because of bodily injury." The medical expenses surely come within this definition. GEICO's reliance on Crenwelge v. State Farm Mutual Automobile Ins. Co., 277 So.2d 155 (La.App. 3rd Cir. 1977), is misplaced. That case held that the medical pay provision in policies were not subject to "stacking" as are UM provisions. The case is inapplicable to the issue raised by GEICO here.
Accordingly, the judgment is affirmed at defendant's cost.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
BEER and GARSAUD, JJ., dissent and assign reasons.
LEMMON, Judge, concurring.
The insurer contracted to provide plaintiff with the following uninsured motorist protection:
"The company will pay all sums which the insured . . . shall be legally *1296 entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership maintenance or use of such uninsured automobile . . .". (Emphasis supplied)
Thus, the general issue of coverage presents two questions: Is the uninsured motorist (Calecas) liable for damages, and does plaintiff's accidental injury arise out of the use of the uninsured automobile?
As to the latter question, Calecas at the time of the accident was using his car, in part, to transport and confine an otherwise unsecured animal while he and his friend were in the course of an automobile trip and were momentarily stopped to view sailboats. If his failure to secure the animal in the course of so using the automobile was such as to render him liable for damages, then the policy provides coverage for such use, because there was a causal relationship between this failure in the use of the car and the accident. The risk created by leaving the unsecured animal in an open vehicle during a momentary stop in the course of an automobile trip had its source in the use of the car and arose from such use.
The more difficult question is whether Calecas' creation of that risk was a legal cause of the accident.
Calecas had the duty to secure his automobile during the momentary stop so as to prevent the animal (whether his or his passenger's) from escaping into the adjacent lane of travel and causing a hazard to passing motorists. Had Calecas secured the animal or the car which contained the animal, the accident would have been prevented. By converse reasoning, Calecas' failure to do so was a cause in fact of the accident.
The duty to secure the animal or the car is designed to prevent exactly what happened. Furthermore, there is an ease of association (the duty-risk counterpart of foreseeability) between the injury and the duty to prevent the reasonably anticipated act of an unrestrained dog's jumping out of an open window of a car momentarily stopped adjacent to a lane of travel.
Calecas' omission was a legal cause of the accident, resulting from a risk created by Calecas' use of the uninsured automobile.
BEER and GARSAUD, Judges, dissenting.
GEICO contends that the following proposed jury charges were erroneously rejected by the trial judge:
CHARGE A:
"Government Employees Insurance Company has introduced into evidence it's policy of insurance insuring plaintiff's automobiles on the date of the accident. Government Employees Insurance Company claims plaintiff has no right to recover under its policy with him and plaintiff claims he does. The uninsured motorists coverage of Government Employees Insurance Company policy states:
`The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.'"
CHARGE B:
"Under Louisiana law for an accident to arise out of the use of a vehicle there must be some causal relationship between the accident and the use of the uninsured vehicle.
"Louisiana law further states the accident must be a natural and reasonable incident or consequence of the use of the vehicle for the purposes contemplated by the policy of insurance. The accident must also be one which can be `immediately identified' with the use of the automobile as contemplated by the parties to the policy. Furthermore, the accident *1297 must be of a type reasonably associated with the use of the automobile as contemplated by the contracting parties. The accident must be one which would not have happened but for the use of the automobile in question.

Baudin v. Travelers [Baudin v. Traders & General Insurance Company, La. App.] 201 So.2d 379.
"Therefore you must determine whether or not the act of a dog jumping out of a window of a parked uninsured motorists vehicle constitutes use of that uninsured motorists vehicle."
In rejecting the proposed charges, the trial judge observed:
"If Calecas is found to be negligent in this case, the negligence would have to be covered by the defendant's policy, for the negligence and resulting injury would necessarily arise out of the `ownership, maintenance or use of the uninsured automobile,' which is covered by the policy in question.
"Thus, if the jury finds Calecas negligent, and that his negligence proximately caused the accident and injury, it would necessarily follow that Calecas' acts of commission, and omission, are out of the `ownership, maintenance or use' of the car, for there is nothing which Calecas did or failed to do related to the dog which is not also related to the use of the automobile."
In our view, the trial court's rejection of GEICO's proposed charges, coupled with the incomplete and incorrect instructions which were given to the jury, essentially deprived GEICO of its right to have the jury address and decide the issue of coverage. By taking away from the jury the right to decide whether or not the events which form the basis for this litigation did, in fact, arise from the "ownership, maintenance or use" of the Calecas automobile, the trial judge committed error. The jury, not the trial judge, was the proper arbiter of this factual issue. Thus, the jury verdict and the resulting judgment should be set aside and a new trial ordered. Accordingly, we respectfully dissent.